## SHELL PIPE LINE CORPORATION v. HARRIS.

### No. 7902.

Court of Civil Appeals of Texas. Austin.
Jan. 10, 1934.

Rehearing Denied Jan. 31, 1934.

R. H. Whilden, of Houston, for appellant.

A. K. Ross, of Austin, for appellee.

BLAIR, Justice.

Appellee sued appellant for $500 as damages to two acres of land, and for $50 as damages to crops growing thereon, alleging that he had constructed a ditch and embankment on his land to protect certain parts of his farm from washing and overflow; that prior to September 1, 1929, appellant, under a pipe line right of way grant from appellee, dug a ditch and constructed a pipe line across appellee's farm, which intersected the drainage ditch and embankment; that appellant failed to properly repair and maintain the drainage ditch and embankment at the point it intersected the pipe line ditch; and that since March 7, 1930, to October 1, 1931, appellant has continuously and negligently failed to properly maintain and repair its pipe line ditch at the point it intersects the drainage ditch and embankment, which negligence caused the water to be diverted from its natural flow through the drainage ditch and caused it to flow over and across appellee's two acres of cultivated land, washing the soil from it and destroying its productiveness; and that because of the washing of the soil and the cost of restoring the two acres of land to its former state of productiveness, appellee has been damaged in the sum of $500. That in negligently causing the water to flow over and across appellee's cultivated two acres of land, the crops growing thereon for the years 1930 and 1931 were destroyed, to appellee's damages in the sum of $50.

Appellant answered by a general demurrer, a general denial, and alleged that it paid appellee on August 27, 1929, $450 for all damages which had accrued or which might accrue from the laying of its pipe line in the place and manner it was laid; and that appellee contributed to his own damages by failing to exercise ordinary care to mitigate or reduce same, if he suffered damages.

The jury found in answer to special issues submitted, that the negligent manner in which appellant maintained its pipe line across appellee's drainage ditch caused the water to overflow and damage the two acres of land and the crops growing thereon; that appellee suffered $40 damages to growing crops, and $200 damages to the two acres of land as the reasonable cost of restoring it to its condition just prior to March 7, 1930. Judgment was accordingly rendered for appellee in the sum of $240; hence this appeal.

By its first three propositions appellant contends that the court submitted the wrong measure of damages for the destruction of the growing crops. Special issue No. 6 and the instruction as to the measure of damages given in connection with it read as follows:

"What damage, if any, was caused by defendant to the growing crops, if any, on plaintiff's land between March 7, 1930, and October 1, 1931?"

"In connection with special issue No. 6 you are instructed that the measure of damages is the difference between the value of the crops that were injured, if any, just before and just after the injury and at the place of the injury, based on its market value."

Appellant objected to the measure of damages submitted, because it did not take into consideration the cost of producing, cultivating, and marketing the crops.

■■ Appellee both alleged and proved the total destruction of the growing crops on the two acres of land for the years 1930 and 1931. It is well settled that "the proper measure of damages for the wrongful destruction of a growing crop is the value of the crop just as it stood on the ground at the time and place of its destruction, such value to be determined by the probable yield of the crop and its reasonable market value when matured, less the cost of cultivating, harvesting and marketing." 13 Tex. Jur. 42, 43, § 37; International, etc., Ry. Co. v. Pape, 73 Tex. 501, 11 S. W. 526; Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139; Sabine, etc., Ry. Co. v. Smith, 73 Tex. 1, 11 S. W. 123; Smith v. Roberts (Tex. Civ. App.) 218 S. W. 27. The trial court gave the measure of damages applicable to injury or partial destruction of a crop. 13 Tex. Jur. 44, § 38, and cases cited. Appellant's aforementioned objection to the instruction pointed out the error therein; and the portion of the judgment awarding $40 damages to growing crops must be reversed.

■By its fourth proposition appellant contends that having pleaded and offered in evidence a release showing that it had paid appellee $450 covering the damages sought to be recovered by appellee, the trial court erred in refusing its request for an instructed verdict. The material portion of the release reads as follows:

"Date Aug. 27, 1929.

"Received of Shell Pipe Line Corporation. Four Hundred Fifty and no-100 Dollars in full of all damages for the laying of pipe line and erecting telephone and telegraph lines in the place and manner they have been laid and erected, and also in full of all damages sustained to date for maintaining and operating the same over and through ———— land." :

The receipt or release shows on its face that it covered (1) construction damages; and (2) "also in full of all damages sustained to date for maintaining and operating" the pipe line after its construction was completed. The damages sued for by appellee accrued the two years following the date of the receipt or release, which specifically recites that it was only intended to cover maintaining and operating damages to date of the receipt. No ambiguity exists in the language of the "receipt for damages," as to what damages were receipted for or released; and the trial court correctly construed the instrument not to cover damages accruing by reason of improperly maintaining the pipe line after the date of the instrument or receipt.

■ In this connection we do not sustain appellant's eighth proposition to the effect that having pleaded and introduced in evidence the aforementioned release which appellant contends was not ambiguous, and that it released appellant from all future damages, the court erred in permitting the introduction of oral testimony to show what damages were intended to be included in the receipt or release. We have held that the release did not cover the damages sued for by appellee; and the introduction of oral testimony showing what damages were intended to be covered by the receipt, if immaterial, could not injure or affect appellant.

■ Appellant's fifth, sixth, and seventh propositions relate to the alleged contributory negligence of appellee in not exercising ordinary care to minimize the damages alleged to have been suffered. It is the contention of appellant that since it pleaded that appellee could have prevented the damages sued for by a small expenditure of money, and since appellee testified that he could have prevented all the damages by the expenditure of $12.50 before the damages occurred, that the court should have granted appellant's request to instruct the jury to return a verdict in favor of appellee for the sum of $12.50. It is further contended that in any event the court should have submitted appellant's requested issue No. 1 as to whether appellee exercised ordinary care in failing to expend the small sum to prevent the damages; and should have submitted requested issue No. 2 as to what amount of money it would have cost appellee to have prevented the damages. We do not sustain these contentions or propositions.

It is true, as held in Gulf Pipe Line Co. v. Watson (Tex. Civ. App.) 8 S.W.(2d) 957, and by this court in the recent case of Walker v. Salt Water Co., 64 S.W.(2d) 1015, that the rule has ever been in Texas that no recovery may be had for losses or damages, whether from tort or breach of contract, which might have been prevented or the consequences avoided, by a reasonable effort or expenditure by the person damaged. But the rule has no application to this case under the undisputed facts, which show that on several occasions appellee complained to appellant of its failure to properly maintain its pipe line ditch at the point it intersected his drainage ditch and embankment, and requested appellant to permit him to fix the breach in the ditch, stating that he could make the repairs for $12.50; and that on each occasion appellant refused him permission to fix the breach, and told him that it employed men for that purpose, who would make the repairs. Manifestly, appellant could not refuse appellee the permission to make reasonable effort or expenditure to prevent the damages, and then charge him with contributing to his injury because he did not make them. Appellant may have been justified in wanting its experienced men to work with or repair its pipe line ditch, the work may have required special care so as not to injure or break the pipe line; but it cannot refuse appellee permission to make the repairs under promise to have its own employees make them, and, upon their failing to do so, charge appellee with failure to make reasonable effort or expenditure to minimize or prevent the damages.

■ By its ninth and remaining proposition appellant contends that the court erred in excluding evidence offered by it showing that all real estate declined in value between March 7, 1930, when the first damages occurred to the two acres of land, and October 1, 1931, when the last damages occurred, appellant contending that the proffered testimony was material as showing how much of appellee's damages were caused by the general decline in value and not due to any act of appellant. If appellee had sued for permanent injury to his land by reason of the soil being washed off of it, the proffered evidence may have had some bearing upon the amount of damages, the measure of which would have been the difference in the market value of the land immediately before March 7, 1930, when the first injury was done, and immediately after October 1, 1931, when the last injury occurred. Appellee did not seek damages for permanent injury to the two acres of land, but only sought to recover the reasonable cost of restoring the two acres to their former productiveness before the soil was washed away. As to the damages to the land, the court instructed the jury "that the measure of damages is the reasonable cost of restoring the two (2) acres in controversy to its condition just prior to March 7, 1930." No objection was made to the measure of damages submitted, and the proof fully sustains the jury's finding that it would cost $200 to restore the land to its condition just prior to the date of the first damages to it.

It follows from our above conclusions that we affirm the portion of the judgment awarding $200 as damages to the two acres of land; but reverse the portion of the judgment awarding $40 as damages to growing crops, and remand the cause as to damages to growing crops.

Affirmed in part and in part reversed and remanded.